No. 68,301

In the Matter of DARRELL D. MEYER, *Respondent*.

(840 P.2d 522)

Opinion filed October 30, 1992.

*Stanton A. Hazlett*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was with him on the formal complaint for the petitioner.

*Darrell D. Meyer*, pro se, and *W. Irving Shaw*, of Emporia, argued the cause for the respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Darrell D. Meyer, of Emporia, an attorney admitted to the practice of law in Kansas. The complaints filed against respondent allege violations of the Code of Professional Responsibility, Supreme Court Rule 225 (1991 Kan. Ct. R. Annot. 173), the Model Rules of Professional Conduct (MRPC), Supreme Court Rule 226 (1991 Kan. Ct. R. Annot. 222), and Supreme Court Rule 207 (1991 Kan. Ct. R. Annot. 149).

A formal hearing before the panel of the Kansas Board for Discipline of Attorneys was held on May 2, 1991, at the Kansas Judicial Center, Topeka, Kansas, on Cases Nos. B4820, B4830, B4958, and B4982. Respondent appeared in person and by counsel. Questions arose as to additional matters, and the hearing was continued for further investigation. Thereafter, Case No. B5325 was filed against the respondent, which was heard on May 19, 1992. The facts as stipulated by the parties were accepted by the panel and set out in the panel's report.

Respondent stipulated in Cases Nos. B4820 and B4830 that he was retained to perform legal work for the estate of Sandra Sue Pees. Respondent filed a petition, an entry of appearance, waiver of notice, and letters of administration but filed nothing thereafter. Eventually, another attorney was retained to close the estate, and a legal malpractice action filed against the respondent resulted in a default judgment in the amount of $3,500. Respondent stipulated and agreed that his conduct constituted vi-

olations of MRPC 1.3 (1991 Kan. Ct. R. Annot. 232), 1.4 (1991 Kan. Ct. R. Annot. 234), 3.2 (1991 Kan. Ct. R. Annot. 275), and Supreme Court Rule 207.

In Case No. B4958, respondent stipulated that he had agreed to represent the complainants in their attempt to void the purchase of a house in which the seller concealed extensive termite damage. The complainants had difficulty obtaining information about the case from the respondent. After the complainants received a demand letter to make a house payment, the seller requested return of the deed. The complainants' numerous attempts to contact respondent were unsuccessful. Respondent failed to take any action on behalf of the complainants and failed to communicate with the complainants about their case. Respondent also failed to cooperate in the investigation of this matter. Respondent stipulated and agreed that his conduct violated DR 6-101(A)(3) (1991 Kan. Ct. R. Annot. 199); MRPC 1.1 (1991 Kan. Ct. R. Annot. 228), 1.3, 1.4, and 3.2; and Supreme Court Rule 207.

In Case No. B4982, respondent stipulated that he was retained to represent Julie A. Jackson in a divorce action. He was paid a $400 retainer and $55 for a filing fee. Respondent prepared the necessary documents to file for an emergency divorce, and he told complainant they would be filed as soon as her husband signed the waiver of summons. Complainant's husband executed the necessary documents in April 1990. Thereafter, complainant was never given a definite court date but was told the divorce would be filed "by Friday" or "next week." Thereafter, respondent would not return complainant's phone calls. In July 1990, complainant contacted an attorney who determined that respondent had not filed a divorce action for the complainant. Complainant requested a return of the retainer and the filing fee. Respondent failed to promptly return same. Respondent stipulated and agreed that his conduct violated MRPC 1.3, 1.4, and 1.15(b) (1991 Kan. Ct. R. Annot. 263).

In Case No. B5325, respondent stipulated that he was retained to represent Mark Grossenbacher in a slip-and-fall case. Although respondent initially kept the complainant informed about the status of the case, after complainant moved to Pennsylvania, he increasingly had difficulty in communicating with respondent.

Complainant was aware the statute of limitations would run on May 4, 1989, and prior to that date made numerous phone calls to respondent to make sure the case was filed before that date. Respondent filed the case on May 4, 1989, and he informed the complainant that he had obtained a hearing date in the summer of 1989. Thereafter, respondent informed the complainant that the hearing date had been continued until September 1989. Thereafter, complainant again was told the hearing had been continued. Subsequently, respondent told complainant that the case had been again continued, to September of 1990. Prior to that date, complainant made numerous phone calls, most of which were not returned. Respondent then called complainant and told him the case had again been continued to a date not yet determined. In May of 1991, the complainant called the Disciplinary Administrator's Office and was informed that the case filed by respondent on behalf of complainant had been dismissed. This was the first time complainant had been made aware that his case had been dismissed. In that case, respondent had failed to comply with the defendant's discovery requests, and the district court ordered respondent to comply by January 3, 1990. Subsequently, at a hearing to dismiss the case, respondent admitted that he had failed to comply with the court's order. The court awarded sanctions against respondent for costs but did not dismiss the case because respondent informed the court that he was withdrawing from the case. The court stayed further proceedings and ordered respondent to follow statutory procedure to withdraw from the case so that his client could retain new counsel. Respondent again failed to comply with the court's order and failed to inform complainant of these facts. On September 12, 1990, the court dismissed complainant's case without prejudice with costs assessed to the plaintiff (complainant herein). Respondent failed to inform complainant of the dismissal. Respondent stipulated and agreed that his conduct violated MRPC 1.3, 1.4, 1.16 (1991 Kan. Ct. R. Annot. 267), and 3.4 (1991 Kan. Ct. R. Annot. 279).

At the hearing before the panel, respondent offered evidence in mitigation. As to mitigation, the panel found, in part:

"In April 1988 and June 1989 the Respondent was seen by Dr. Brian Joseph, a psychiatrist at Parkview Hospital of Topeka, who diagnosed the

Respondent's condition as depression. In November 1990, Dr. Joseph hospitalized Mr. Meyer, noting a diagnosis of 'major depression, recurrent, severe, non-psychotic.' Mr. Meyer was hospitalized because he could not concentrate, experienced short-term memory loss, and indeed had difficulty spelling simple words; he suffered from guilt and low self-worth; and he had considered suicide. . . .

"Mr. Meyer's failure to communicate with clients or the Disciplinary Administrator's office and his inability to meet deadlines or complete work were characteristics of one suffering from depression, in Dr. Joseph's opinion. Dr. Joseph was also of the opinion that sleep apnea could be a contributing factor to depression.

"Dr. Ted W. Daughety, board-certified in internal medicine, pulmonary medicine, critical care, and sleep medicine, first saw Mr. Meyer for a possible sleep disorder in mid-April, 1991, shortly before the first hearing date in this matter. Sleep apnea was subsequently confirmed as a diagnosis. As a consequence of his sleep disorder, which had worsened as he aged, Mr. Meyer was always tired and sleepy, suffered memory loss, and was unable to function as he formerly had done in his profession. It was at least a contributing factor to his depression and may well have been the sole cause. Dr. Daughety prescribed the use of a mechanical breathing aid called nasal continuous positive airway pressure ('Nasal CPAP'). Mr. Meyer has used this device for the last year, and it has prevented drops in blood oxygen and stoppages in breathing that previously characterized his sleep. Mr. Meyer continued to be monitored by Dr. Daughety, whose office also sees to the maintenance of the nasal CPAP.

"Because the two hearing dates in these cases were more than a year apart, the panel has had the opportunity to follow Mr. Meyer's progress and prognosis, both of which are good."

## The panel made the following recommendation:

"The panel is mindful of the severity of the degree of neglect and lack of communication Mr. Meyer displayed in the cases here considered. We have considered whether a suspension should be imposed. We further note, however, that all these cases arise from a period in which the Respondent suffered from serious depression and sleep apnea. The interference of those conditions with his personal and professional life has compelled the Respondent to negotiate complex arrangements with the IRS. Despite personal financial difficulties, Respondent continues to timely make payments on obligations to former clients. To suspend Respondent from practice at a time when his functioning is no longer impaired can have only a punitive effect, not a rehabilitative one. The effect of a suspension would be the loss of his home and other personal hardships; further, those whom he wronged but to whom he is making restitution would lose the benefit of his efforts. Such a result is unwarranted and far too harsh.

"The panel recommends that Respondent be publicly censured and placed upon supervised probation [for one year] pursuant to the following terms and conditions:

1. Attorney Kristin Hutchison will supervise Respondent's probation and supervise his legal practice for the period of one year from the Supreme Court's order imposing probation.

2. Kristin Hutchison shall be acting as an officer of the Court and as agent for the court as supervisor of probation in monitoring the legal practice of Respondent. Ms. Hutchison shall be afforded all immunities granted by Supreme Court Rule 223 [1991 Kan. Ct. R. Annot. 172] during the course of her activities as directed by the Supreme Court's order.

3. Respondent will continue to pay restitution to the heirs in the Pees estate matter and to the Cowans. Verification of the reimbursement of Julie Fast will be provided to the Disciplinary Administrator. Respondent will continue to attempt to resolve the Grossenbacher matter. Periodic reports on the status of all restitutions will be provided to the Disciplinary Administrator until all debts are satisfied.

4. Respondent will continue to follow his sleep apnea conditions with qualified professionals and shall utilize such aids, medications, and techniques as are prescribed.

5. Respondent will allow Ms. Hutchison access to his files, his secretary, his trust account, and his doctors. She shall periodically, but at least once per month, check the following:

    a. the status of each case on Mr. Meyer's case list;

    b. the efficacy of Mr. Meyer's docketing system;

    c. management of discovery;

    d. responses to client requests for information;

    e. Mr. Meyer's trust account;

    f. the views of the local judges as to their evaluation of Mr. Meyer's performance.

6. On a quarterly basis, Ms. Hutchison will report to the Disciplinary Administrator as to the Respondent's progress and/or any problems she observes. Any material deviation from proper practice, however, shall be immediately reported.

7. At the end of one year, the Disciplinary Administrator shall certify to the Supreme Court the Respondent's satisfactory completion of probation."

We adopt the panel's findings. We agree with the panel that suspension at this time would be unwarranted and too harsh. However, we conclude that, rather than publicly censuring respondent, discipline should be suspended and respondent should be placed on probation on the terms and conditions recommended by the panel.

IT IS THE ORDER OF THE COURT that imposition of discipline against respondent Darrell D. Meyer be and is hereby suspended, and he is placed on probation for the period of one year on the

terms and conditions recommended by the panel as hereinabove set out and numbered 1 through 7.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set forth herein, a show cause order will issue to the respondent, and this court shall take whatever disciplinary action it deems just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports and that respondent pay the costs of these proceedings.